# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**HENRY T. C.[1],**

       Plaintiff,                 Civ. No. 6:20-cv-00539-AA

    v.                         **OPINION & ORDER**

**COMMISSIONER OF SOCIAL
SECURITY**,

       Defendant.

_____

AIKEN, District Judge:

    Plaintiff Henry T. C. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for a period of disability and disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons below, the Commissioner's decision is REVERSED and this case is REMANDED for benefits.

## BACKGROUND

    In August 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning February 8, 1998. Tr. 217-23. Plaintiff also protectively applied for Supplemental Security Income ("SSI") on May 14, 2015,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

alleging disability beginning May 20, 2012. Tr. 224-29, 918. The agency denied the claims both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 130-40. He appeared for a hearing before Administrative Law Judge ("ALJ") Robert Spaulding in June 2016, where he amended the alleged onset date to January 1, 2008. Tr. 60-106; *see also* Tr. 37. In August 2016, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 34-54. Plaintiff requested review of the hearing decision, which the Appeals Council denied in September 2017. Tr. 215-16, 1-6. Plaintiff subsequently filed a Complaint with the Court for judicial review. Tr. 1021. Based on the stipulation of the parties, the Court remanded the matter for further proceedings to "reweigh the opinion evidence of record; reassess the claimant's residual functional capacity; obtain supplemental vocational expert evidence at step five, if necessary; and, issue a new decision." Tr. 1025. The Court entered judgment in December 2018. Tr. 1024.

The following April, the Appeals Council issued an Order remanding the matter to the ALJ. Tr. 1033-39. In December 2019, Plaintiff appeared for a remand hearing before the ALJ. Tr. 1504-47. At the hearing, the ALJ granted a motion to amend the alleged onset date to August 20, 2013. Tr. 1517-18. On February 4, 2020, the ALJ issued a decision denying Plaintiff's claims for benefits. Although the ALJ granted Plaintiff's motion to amend the alleged onset date to August 20, 2013, Tr. 1517-18, he issued a decision that considered the claims from the previous alleged onset date of January 1, 2008. Tr. 918, 932. Plaintiff maintains an alleged onset date

of August 20, 2013.  Tr. 915-41.  Plaintiff now seeks review of the agency's final decision.  *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

## DISABILITY ANALYSIS

The Social Security Act ("the Act") provides that certain individuals who are "under a disability" shall receive disability benefits. 42 U.S.C. § 423(a).  A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the [Act.]" *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

At step one, the agency determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step two, it determines whether the claimant has one or more severe impairments that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months.  *Id*. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  At step three, it determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. §§ 404.1520(a)(4), 416.920(a)(4).  It then assesses the claimant's residual functional capacity ("RFC").  *Id*.  At step four, it determines whether the claimant's RFC allows for any past relevant work.  *Id*.  The claimant bears the burden of proof at steps one through four.  *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th

Cir. 2001). At step five, the agency determines whether the claimant's RFC, age, education, and past relevant work experience allow for an adjustment to "other work" existing in significant numbers in the national economy. *Id*. §§ 404.1520(a)(4), 404.1560(c), 416.920(a)(4), 416.960(c). The Commissioner bears the burden of proof at step five. *Id*. at 953-54. If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## COMMISSIONER'S DECISION

The ALJ performed the sequential analysis, noting that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. Tr. 921. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, the previous alleged onset date. Tr. 921. At step two, the ALJ found the following severe, medically determinable impairments: obesity; lumbar degenerative disc disease with radiculopathy; ankyloses of the sacroiliac joint; coronary artery disease; plantar fasciitis; equinus contracture of the ankle; bilateral Achilles tendinitis; hypokalemia; obstructive sleep apnea; bipolar depressive disorder; and posttraumatic stress disorder ("PTSD"). Tr. 921. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 921.

Next, the ALJ found that Plaintiff has an RFC

". . . to perform sedentary work as defined in 20 CFR 404.1567(a) and
416.967(a).  The claimant is limited to no climbing of ramps, stairs,
ladders, or scaffolds.  He is limited to frequent balancing, but occasional
stooping, kneeling, crouching, and crawling.  The claimant is limited to
no exposure to hazards such as unprotected heights and moving
mechanical parts.  He is limited to no exposure to extreme heat. The
claimant is limited to simple routine tasks consistent with a reasoning
level of two or less and unskilled work as defined by the Dictionary of
Occupational Titles.  He is limited to occasional interaction with
supervisors, and superficial interaction with coworkers (defined as no
teamwork or coordinated work), and superficial interaction with the
public (defined as casual or perfunctory).  The claimant is limited to
goal-oriented work but is unable to perform at a production rate pace."

Tr. 924.  Proceeding to step four, the ALJ found Plaintiff unable to perform his past
relevant work.  Tr. 931.  At step five, he found that Plaintiff retained the ability to
perform the requirements of other jobs existing in significant numbers in the national
economy, such as final assembler, small parts assembler, and film touch up inspector.
Tr. 931-32.  The ALJ then found that Plaintiff was not disabled under the Act from
January 1, 2008, through February 4, 2020.  Tr. 932.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based
on proper legal standards and the findings are supported by substantial evidence in
the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190,
1193 (9th Cir. 2004).  "Substantial evidence is more than a mere scintilla but less
than a preponderance; it is such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion."  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir.
2012) (internal quotation marks omitted).  To determine whether substantial

evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).  If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

Plaintiff asserts that the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony without giving clear and convincing reasons; (2) improperly discounting the medical opinion evidence and failing to provide specific and legitimate reasons for doing so; and (3) improperly discounting "other" medical source evidence and failing to identify a germane basis for doing so.

## I.    Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in failing to identify specific, clear and convincing reasons to discount Plaintiff's subjective symptom testimony.  ECF No. 21 at 19.  Defendant responds that the ALJ correctly discounted Plaintiff's subjective complaints because those complaints are inconsistent with Plaintiff's activities and are undermined by the medical record.  ECF No. 22 at 3-4.

To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis.  20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment

that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Rollins v. Massanari,* 261 F.3d 853, 859 (9th Cir. 2001). Further*,* The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### A.    *Plaintiff's Testimony*

At the hearing, Plaintiff testified that he uses a cane during flare-ups of lower back pain. Tr. 1521. When he has flare-ups, he cannot walk or move anything and must occasionally crawl and use the cane to pull himself up. Tr. 1521. He is able to prepare "easy" meals, like microwave macaroni, pizzas, burritos, and TV dinners. Tr. 1522-23. He is able to do laundry with help from his daughter. Tr. 1524. Plaintiff

"sometimes" does dishes, occasionally with help from his daughter. Tr. 1524. He does not like being around a lot of people. Tr. 1525. His fiancée and daughter do most of the grocery shopping. Tr. 1525. Plaintiff goes shopping with them once or twice a month, and he goes late at night or early in the morning to avoid being around people. Tr. 1525. Plaintiff testified that he experiences anxiety and panic attacks in crowds. Tr. 1525. He stated that he is unable to sit or stand for very long because of bilateral foot pain. Tr. 1528. At times, he is unable to wear shoes because of the swelling and pain in his feet. Tr. 1528. He experiences shortness of breath and is unable to walk long distances. Tr. 1529. He stated that doctors had told him to lose weight and to improve his diet, but it was not easy because he is "hurting all the time." Tr. 1530. In the past, he experienced anger issues and became violent and threw things. Tr. 1534.

**B.    _ALJ's Findings_**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 924. However, the ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 924.

First, the ALJ summarized Plaintiff's statements about his own reported activity, namely, that Plaintiff could "shop for groceries in stores once or twice per month," and that Plaintiff could cook, take out the trash, supervise children in the home, perform hygiene activities. Tr. 925.

Second, the ALJ also pointed to medical evidence related to Plaintiff's lower back pain.  The ALJ found that Plaintiff first began complaining of lower back pain in June 2013.  Tr. 925.  At that time, physical examination showed "tenderness to palpation of paraspinous musculature in the lower lumbosacral region." Tr. 374.  The ALJ stated that, aside from "tenderness to palpation of the right lower back . . . the exam was normal."  Tr. 925 (ALJ decision citing Tr. 374).  The next year, Plaintiff presented with further complaints of lower back pain, and imaging at the time showed "ankylosis of the sacroiliac joints bilaterally" and "unremarkable lumbar spine series."  Tr. 925 (ALJ decision citing Tr. 464, 487).  Plaintiff continued to complain of back pain in 2019.  The ALJ noted from Plaintiff's medical record that physical examination showed decreased range of motion and tenderness to palpation with some weakness in the lower extremities, and updated imaging showed single level disc disease without stenosis or neuroforaminal narrowing.  Tr. 925 (ALJ decision citing Tr. 1395, 1429, 1436).

Third, the ALJ discussed Plaintiff's chest discomfort, noting that Plaintiff testified that he continues to have shortness of breath upon exertion.  Tr. 925.  The ALJ reviewed Plaintiff's diagnoses of acute myocardial infarction, coronary artery disease, and noted that Plaintiff has had two stents placed.  However, the ALJ stated that progress notes in 2017 showed that Plaintiff was able to begin exercising by walking, doing sit-ups, jogging, and jumping rope.  Tr. 925 (ALJ decision citing Tr. 1456) (as to how often he exercises, Plaintiff responded to physician questionnaire that he exercises "when [he] remember[s]" and, as to what type of exercise, Plaintiff

stated that he "tr[ies] to" do walking, sit-ups, jogging, jump rope." The ALJ further found that Plaintiff was doing well on a regimen of aspirin and Plavix, and that by the end of 2018, Plaintiff reported no further issues with his heart condition. Tr. 925 (ALJ decision citing Tr. 1331).

Fourth, the ALJ made findings about Plaintiff's testimony related to his foot pain. The ALJ noted that physical examination revealed tightness in the tendons of the feet and edema, and that Plaintiff had been diagnosed with equinus contracture of the ankle and Achilles tendinitis. Tr. 925 (ALJ decision citing 1416, 1418, 1420-21). Later, physical examination showed signs of arch collapse, propulsive gait, and painful range of motion in the lower extremities. Tr. 925 (ALJ decision citing 1345-46).

### C.    *Review of ALJ's Findings*

Plaintiff asserts that the ALJ (1) never identified what testimony he found inconsistent with Plaintiff's reported activities or (2) explained why the medical record and other evidence undermined Plaintiff's subjective complaints. ECF No. 21 at 21. The Court agrees and finds that the ALJ erred in determining that Plaintiff's reported activities are inconsistent with the pain-related impairments that Plaintiff described in his testimony.

### 1.    Reported Daily Activities

First, concerning Plaintiff's reported activities (cooking easy meals, doing dishes and laundry with assistance, and going to the grocery store once or twice a month), the Ninth Circuit has "repeatedly warned that ALJs must be especially

cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Further, The Act "does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996). Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the court has also held that only if a claimant's activity were *inconsistent* with their claimed limitations would these activities have any bearing on the claimant's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (emphasis in original); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (citations omitted).

Here, Plaintiff's daily activities, as he described them in his testimony and elsewhere in the record, were consistent with his statements about the impairments caused by his pain. The ability to prepare "easy" microwave meals, take out trash,

"sometimes" do dishes and laundry with some assistance, take rests, and avoid walking long distances is consistent with the pain that Plaintiff described. *See Garrison*, 759 F.3d at 1016 (finding similarly). It is also consistent with an inability to function in a workplace environment.

The ALJ did not identify which parts of Plaintiff's subjective complaints were not credible. And, the ALJ did not explain why Plaintiff's self-reported ability to cook and do occasional chores undermines Plaintiff's reports of disabling foot, back and chest pain. Accordingly, the supposed inconsistencies between Plaintiff's daily activities and his subjective testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony regarding his pain-related impairments.[2]

### 2.    Medical Evidence

Second, the ALJ's determination that Plaintiff's testimony is inconsistent with the medical record is belied by the evidence and must be rejected. The ALJ cited to

---

[2]    Concerning shortness of breath, the ALJ discussed Plaintiff's supposedly inconsistent reported activities in conjunction with evaluation of medical evidence relating to Plaintiff's heart condition, which includes a past heart attack, a diagnosis of acute myocardial infarction, coronary artery disease, with notes that Plaintiff has two stints in his heart. The ALJ appears to slightly mischaracterize Plaintiff's report on a physician intake questionnaire where Plaintiff responded that he exercises "when he remembers." The ALJ stated that Plaintiff was "able to begin exercising" by jogging, jumping rope, etc., as though Plaintiff had successfully started such a regimen. Tr. 925. The intake form is, at best, unclear when (or if) Plaintiff ever "remembers" to do the exercises he references, and the notes on the intake form emphasize in quotations that if Plaintiff remembers, he "tries to" jog or jump rope. Plaintiff's single report about trying to jog or jump rope is not evidence of a daily activity, and is swallowed by the record as a whole, including the ALJ's replete findings that Plaintiff can withstand little to no exertion.

several medical sources that support—rather than undermine—Plaintiff's claims of lower back pain, foot pain, shortness of breath upon exertion, and mental health challenges.

The Court recognizes that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's findings, however, must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.1990). Once the claimant produces medical evidence of an underlying impairment—as Plaintiff did here with the diagnosis and treatment of his lower back and foot pain, underlying heart condition, and mental health challenges, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan* 947 F.2d 341, 343 (9th Cir.1991) (en banc).

Here, Plaintiff produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina,* 674 F.3d at 1112. There was no evidence of malingering. The ALJ did not provide clear and convincing reasons for discrediting Plaintiff's testimony regarding the severity of symptoms. *Rollins,* 261 F.3d at 859. Accordingly, the ALJ's discounting of Plaintiff's subjective symptom testimony is not supported by substantial evidence and is thus reversable error.

## II.   Medical Opinion Evidence

Plaintiff contends that the ALJ erred in weighting the opinions from Scott Mendelson, MD; Gregory Cole, Ph.D.; and Nathaniel Keplinger, DPM. Plaintiff asserts that the ALJ improperly weighted those medical opinions, which should have been credited as true. ECF No. 21 at 6. Defendant responds that the medical opinion evidence supports the ALJ's findings and that the ALJ reasonably discounted the opinions of Drs. Cole, Mendelson, and Keplinger. ECF No. 22 at 6.

"Medical opinions are statements from acceptable medical sources that reflect judgements about the nature and severity of [claimants'] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Regardless of its source, the ALJ is required to consider and explain the weight afforded to every medical opinion in the record using certain factors, such as the amount of relevant evidence that supports the opinion, the quality of the doctor's explanation, the consistency between the opinion and the medical record as a whole, and the doctor's familiarity with the record as a whole. *Id*. §§ 404.1527(c), 416.927(c).

The opinions of treating doctors are generally favored over those of both examining and non-examining ("reviewing") doctors, and the opinions of examining doctors are favored over reviewing opinions. *Id*.; *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). Thus, even if contradicted by another medical opinion, the treating or examining doctor is nevertheless "entitled to deference" and may be

rejected only with specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 631, 633 (9th Cir. 2007).

### A.    *Nathaniel Keplinger, DPM – Treating Provider Opinion*

Dr. Keplinger had treated Plaintiff four times since 2018. Tr. 1494. Dr. Keplinger diagnosed Plaintiff with lumbar radiculopathy, plantar fasciitis, neuropathic pain, foot pain, and congenital pes planus. Tr. 1494. Dr. Keplinger found that plantar fasciitis was an ongoing problem for Plaintiff and that Plaintiff's symptoms included sensations of pinching, stabbing, shooting pain in the top-middle of his foot, radiating toward his toes and bottom of the foot. Tr. 1495. He found that Plaintiff experienced throbbing, stabbing, pinching, shooting pains in the left foot, and that Plaintiff had pain to his lower back while sitting and elevating his legs. Tr. 1495.

Dr. Keplinger noted that Plaintiff would need to lie down or rest periodically during the day, stating as the reason Plaintiff's "lower back pain and leg pain," determining that the length of time Plaintiff would need such rest depends on his tolerance. Tr. 1495. Plaintiff could sit for thirty minutes at a time and four hours total in an eight-hour workday. Tr. 1496. He could stand/walk for thirty minutes at a time and four hours total during an eight-hour workday. Tr. 1496. He required opportunities to shift positions at will. Tr. 1496. He would need a ten-minute break every thirty minutes in an eight-hour workday. Tr. 1497. Ultimately, Dr. Keplinger assessed that Plaintiff could perform work involving frequently lifting or carrying 10 pounds or less, and occasionally lifting or carrying 20 pounds or less. Tr. 1497; *see*

*also* 20 CFR § 404.1567 (defining "sedentary work" as work involving no more than 10 pounds or less and "light work" as no more than 20 pounds at a time).  Dr. Keplinger further concluded that Plaintiff would miss work more than 4 days per month based on the above symptoms, as well as Plaintiff's described lower back and leg pain.  Tr. 1497.

### B.    *ALJ Findings – Dr. Keplinger*

The ALJ gave Dr. Keplinger's opinion "little weight."  Tr. 927.  The ALJ credited Dr. Keplinger's opinion because it was based on an established treating and examining relationship with Plaintiff, which allowed for an in-person inspection of the course of several visits.  Tr. 927.  However, the ALJ stated three reasons for giving Dr. Keplinger's opinion less weight.  First, in terms of its reasoning and justification, the ALJ noted that Dr. Kepplinger partly based his conclusion on Plaintiff's described low back pain and leg pain, which the ALJ concluded is "not entirely related to Dr. Keplinger's specialty of podiatry."  Tr. 927.

Second, the ALJ stated that, while the medical record reflects severe plantar fasciitis, Dr. Keplinger's conclusion that Plaintiff would be able to perform "light work" is internally inconsistent with the conclusion that Plaintiff would miss at least 4 days per month as a result of his lower extremity limitations.  Tr. 927.

Finally, as to the merits of the limitations Dr. Keplinger assessed, the ALJ determined that the evidence in the record supported a greater degree of restriction in Plaintiff's ability to carry and lift, based on his heart condition, his obesity, and his lumbar disc disease.  *See id*. (citing voluminous medical exhibits).  As such, the ALJ

determined that there is no apparent reason that if Plaintiff were limited to sedentary exertional work—rather than light work—Plaintiff would not require additional unscheduled breaks or miss more than four days of work per month.  Tr. 927.

C.    *Review of ALJ Findings – Dr. Keplinger*

To be sure, an ALJ may consider the source's specialty.  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  Yet, here, the ALJ gave Dr. Keplinger's opinion "little weight," because in the ALJ's view, Dr. Keplinger related his reasoning to low back and leg pain.  Tr. 927.  However, Dr. Keplinger stated that his opinion was based on treating Plaintiff over the years, and the ALJ's decision failed to recognize that the opinion expressed by Dr. Keplinger was based on his significant experience with Plaintiff and supported by numerous records.  Therefore, it was entitled to weight that an otherwise unsupported and unexplained opinion would not merit.

In discounting Dr. Keplinger's opinion, the ALJ appears to ignore the bulk of Dr. Keplinger's treatment records for Plaintiff. For example, Dr. Keplinger's examination and treatment of Plaintiff involved Plaintiff's "lower extremities," and Plaintiff's "gait," where Dr. Keplinger noted severe pain on palpation to the medial ankle along the PT tendon, and posterior Achilles tendon from insertion to the myotendinous region bilaterally; plus-one non-pitting edema bilaterally; painful range of motion of the lower extremities; arch collapse with prominent medial talar head eminence bilaterally; and an antalgic and apropulsive gait.  Tr. 1298, 1303, 1308, 1339.

The record demonstrates that Dr. Keplinger noted that Plaintiff's feet were extremely sensitive to light touch. Tr. 1303, 1308, 1339. Dr. Keplinger also concluded that Plaintiff suffered from peripheral neuropathy with evidence of callus formation of either foot. Tr. 1309. Dr. Keplinger assessed severe nerve damage bilaterally of the lower extremities, lumbar radiculopathy, plantar fasciitis, and posterior tibial tendon dysfunction bilaterally. Tr. 1299. He noted that Plaintiff had a "severe deformity involving [the] bilateral foot and ankle complex" and that his condition was "expected to be lifetime." Tr. 1298. He recommended bracing, limited weight bearing, and use of a cane. Tr. 1299, 1304, 1309, 1340; *see also* Tr. 1316.

In light of the evidence apparent from Dr. Keplinger's treatment records, it was error for the ALJ to discount Dr. Keplinger's opinion on the basis that it related to "leg and lower back pain" outside of Dr. Keplinger's specialty, when much of the treatment related directly to that specialty, as described above. The ALJ ignored Dr. Keplinger's treatment documentation of Plaintiff, and also did not provide cogent reasons why Dr. Keplinger, a specialist in podiatry, was not qualified to opine about pain in Plaintiff's leg and low back, where Dr. Keplinger had access to Plaintiff's medical history and had treated Plaintiff over two years.

The ALJ's second reason for assigning little weight Dr. Keplinger's opinion based on "internal inconsistencies" is also error, where there is no inconsistency between an opinion that Plaintiff can do light work while also needing to take resting breaks.

Finally, the ALJ limited Plaintiff to sedentary work—a lower metric of exertional work than Dr. Keplinger assigned to Plaintiff, without setting forth specific and legitimate reasons for doing so, or by pointing to another medical opinion to support that conclusion.

In sum, Dr. Keplinger's opinion was owed deference and is "entitled to the greatest weight ... even if it does not meet the test for controlling weight." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir.2007). The ALJ did not meet the "substantial evidence" requirement because he failed to "[set] out a detailed and thorough summary of the facts and conflicting clinical evidence, [state] his interpretation thereof, and [make] findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

## III. Mental Health Opinion

Under the Act, healthcare providers rate a claimant's degree of limitation in specific areas using a five-point scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a. The Act lists domains of functional limitations that claimants must demonstrate to meet the mental disorder listings, and a claimant's disturbance in mood must result at least two "marked" ratings or one "extreme" rating. See 20 C.F.R. Part 404, Subpart P, Appendix 1; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.2 (9th Cir. 1999).

### A.    *Gregory Cole, Ph.D., Consulting Psychologist*

Dr. Cole examined Plaintiff on March 10, 2016.  Tr. 865.  Dr.  Cole based his opinion on clinical interview, behavioral observations, a review of available medical records, and the results of several psychometric tests, including the Wechsler Memory Scale—Immediate and Delayed Memory, serial sevens, digits forward and digits backward, proverbs, basic arithmetic skills, basic information to determine fund of general information, and Beck Depression Inventory II ("BDI-II").  Tr. 865.

Dr. Cole concluded that Plaintiff had "moderate" impairment of his ability to understand and remember complex instructions; carry out complex instructions; interact appropriately with the public, supervisors, and co-workers.  Tr. 871-72. Plaintiff described his mood as good, and Dr. Cole observed an affect congruent to his verbalizations.  Tr. 867.  Plaintiff was engaged and cooperative, and his thought processing and content were generally organized.  Tr. 867.  Plaintiff appeared to be a fair historian.  Tr. 867.  His judgment and insight were also fair.  Tr. 867.  He was able to recall five digits forward and three digits backward; he displayed some problems with attention and concentration with these tasks.  Tr. 868.

Plaintiff exhibited below average intellectual capabilities overall.  Tr. 868.  He could not indicate how an egg and seed were similar nor provide meanings for certain proverbs.  Tr. 868.  He lost focus and was unable to complete serial sevens.  Tr. 868. He displayed slightly below average ability with delayed memory.  Tr. 868.  He was not able to calculate eight times nine nor subtract seven from twenty-two. Tr. 868.

The BDI-II indicated severe depression. Tr. 869. Dr. Cole diagnosed severe bipolar II disorder, most recent episode depressed; unspecified anxiety disorder; specific learning disorder with impairment in mathematics; severe cannabis use disorder; and rule-out PTSD. Tr. 869. He opined that Plaintiff's reported pain and his level of anxiety would be the primary factors that would impact his overall level of vocational success. Tr. 869.

Dr. Cole assessed moderate impairment in Plaintiff's ability to understand, remember, and carry out complex instructions and to interact appropriately with the public, supervisors, and coworkers. Tr. 871-72.

Dr. Cole concluded that Plaintiff had a "marked" impairment on his ability to make judgments on complex work-related decisions and "marked" impairment on his ability to respond appropriately to usual work situations and to changes in a routine work setting. *Id.*

### B. *Scott Mendelson, Primary Treating Psychiatrist*

Dr. Mendelson, a treating provider, assessed Plaintiff on May 12, 2016. On the assessment form, Dr. Mendelson noted the same moderate limitations as did Dr. Cole, but determined Plaintiff was "markedly limited" in other areas—defined as a limitation which "precludes the ability to perform the designated activity." Tr. 878. Dr. Mendelson also noted that Plaintiff was "markedly limited" in his ability to work around others without being distracted by them, get along with coworkers without distracting them, complete a normal workday without interruptions from psychologically-based symptoms, and travel to unfamiliar places or use public

transportation.  Tr. 879-81.  To support the "markedly limited" assessment, Dr. Mendelson listed Plaintiff's diagnosis of borderline personality disorder and PTSD, noting as a prognosis that Plaintiff could have "modest improvement."  Tr. 881.  As the basis for his assessment of Plaintiff's impairments, Dr. Mendelson wrote "clinical interaction over months."  Tr. 881.

### C.    *Review of ALJ Findings – Dr. Cole and Dr. Mendelson*

The ALJ gave both Dr. Cole's and Dr. Mendelson's opinions "partial weight. As to Dr. Cole, the ALJ determined that the medical the record supported his evaluation concerning Plaintiff's "moderate" impairments.  Tr. 929.  The ALJ explained that Dr. Cole's "moderate" designation of Plaintiff's impairments reasonably related to objective findings of other health care providers throughout the record, noting Plaintiff's anger management issues, his overall dislike for being in public with social anxiety, and his beliefs regarding the appropriateness of violence to resolve conflict.  *Id*.  The ALJ also found that the evidence demonstrated that Plaintiff struggled with bipolar disorder and PTSD, adding that such evidence "supports restricting the required level of interaction that Plaintiff can have with supervisors, with coworkers, and with the public."  Tr. 929.

Though the ALJ credited Dr. Cole's assessment concerning Plaintiff's "moderate" impairments, the ALJ gave little weight to Dr. Cole's "marked" restrictions on Plaintiff's abilities, stating that such a restriction was not supported by the medical record.  Tr. 929.  The ALJ reasoned that "a marked restriction . . .

requires a substantial loss in the ability to effectively function," and that Plaintiff's medical record was inconsistent with that definition. Tr. 929.

To support the "little weight" determination, the ALJ pointed to evidence that Plaintiff's mood showed improvement with medication, that Dr. Cole and other providers had noted Plaintiff's "normal mood and affect," and that Plaintiff was able to maintain good hygiene and appropriate dress and fair to normal insight and judgment. *Id*.

As to Dr. Mendelson, the ALJ found that there was a "lack of support offered by Dr. Mendelson" for his opinion concerning Plaintiff's level of distractibility and limited ability to work without psychological interruptions. Tr. 929. The ALJ stated that the record contained "no findings of distractibility at all." Tr. 929. The ALJ did not cite to any contradictory opinions of other medical professionals concerning Plaintiff's mental health.

Here, the record documents that Plaintiff experiences mood swings, "meltdowns," and periods of exacerbated symptoms, which significantly impact his ability to demonstrate appropriate behaviors and social interactions. E.g., Tr. 482 (reporting that his mood swings were worsening and "getting him into trouble"); 493-512 (documenting an incident in which Plaintiff was transported by ambulance for evaluation after an emotional outburst/breakdown from hearing that his aunt had died; Plaintiff collapsed, became irrational, hostile, and violent, hyperventilated, was verbally assaultive with police officers, and eventually became unresponsive); 474 (noting that Dr. Mendelson assessed that Plaintiff's recent episode was evidence of

personality disorder); 1465 (documenting exacerbated symptoms and acknowledging thoughts of other hurting people); 1326 (stating that there were "a few individuals that [he] would like to torture and leave for dead"); 1317 (noting an anger outburst that resulted in his fiancée kicking him out of the house), 1382 (noting that Plaintiff's anxiety is triggered by other people), 1487 (acknowledging recent "meltdowns" when overwhelmed). The record as a whole documents waxing and waning mental symptoms capable of impacting Plaintiff's concentration, distractibility, daily activities, and interactions with others.

The Ninth Circuit has stated that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison* 759 F.3d at 1017.

Further, "[the treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.2001). Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–01 (9th Cir.2008) ("Nor are the

references in [a doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."). They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace. *See, e.g., Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir.2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."). "Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." Garrison, 759 F.3d 995, 1018.

Here, ALJ discredited Dr. Cole's and Dr. Mendelson's opinions mainly on the ground that the record showed Plaintiff's condition had improved. Contrary to the ALJ's essentially findings of improvement with treatment, mental health records document suicidal ideation, anxious presentation, circumstantial thought processes, pressured and rambling speech, homicidal ideation, limited insight and judgment, and anger outbursts and "meltdowns." Tr. 482, 480, 899, 892, 888-89, 1202, 1472-73, 1465, 1326-28, 1319, 1317, 1487, 1364. There is not substantial evidence in the record that Plaintiff experienced improvement with treatment; rather, he experienced good days and bad days. E.g., Tr. 890, 1487. The record demonstrates that Plaintiff's

mental health symptoms impacted his daily activities in the manner described by Dr. Mendelson, where he indicated marked impairment in the area of Plaintiff's "ability to travel in unfamiliar places or to use public transportation." Tr. 881 (emphasis added). While Plaintiff may be able to use public transportation, there is no evidence that he is able to travel in unfamiliar places. Further, Plaintiff's mental health related symptoms also impacted his physical health as corroborated by the medical record. *See* Tr. 906 (reporting that he discontinued use of his CPAP machine due to significant anxiety), 1189 (noting that Plaintiff refused to go to the ER for evaluation because he did not like being around people secondary to his PTSD). In total, the ALJ's reliance on essentially other health professionals or Plaintiff himself occasionally describing Plaintiff has having "good mood" or appropriate hygiene is neither a legitimate basis to reject Dr. Mendelson and Dr. Cole's opinions, nor is it supported by substantial evidence.

Accordingly, the ALJ has not presented specific or legitimate reasons to discredit the opinions of Dr. Cole or Dr. Mendelson concerning Plaintiff's "marked limitations," in domains which, together constitute severe impairments under the Act and render him disabled.[3]

.

---

[3]    To the extent that the ALJ also discredited Plaintiff's subjective symptom testimony concerning his mental health issues, the ALJ did not discuss clear and convincing reasons for rejecting Plaintiff's testimony that he suffered panic attacks and high anxiety and bouts of paranoia—symptoms that caused major difficulties with social functioning and responding to such stresses as shopping for groceries.

### III.    Other Medical Sources

Nurse practitioners and therapists are considered "other sources."  20 C.F.R. § 404.1513(d), *Ghanim*, 763 F.3d at 1154, 1161.  The ALJ may reject the opinion of an "other source" by giving "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).  An ALJ may discount an opinion that lacks explanation. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).   In weighing a medical source's opinion, an ALJ properly considers the length of time the source has treated the claimant.  20 C.F.R. §§ 404.1527(c)(i), 416.927(c)(i).

Here, Nurse Practitioner Willis, a treating provider, submitted a "Treating Source Statement," wherein she answered that that Plaintiff would need to rest periodically during the day, but for what duration, she did not know.  Tr. 1500.  Willis provided that the reason Plaintiff would need to rest periodically was because "walking, sitting, standing makes his pain worse." *Id*.  Willis cited as Plaintiff's diagnosis lumbar disc bulge, SI joint inflammation, and calcific tendinitis.  Tr. 1499. The form provided space for Willis to provide her assessment for Plaintiff's work capacity due to physical limitations, but Willis stated that Plaintiff would "need to go to [an] occupational therapist" for such determinations, as she had "only just met this gentleman."  Tr. 1501-03.

The ALJ gave Willis's opinion "little weight."  Tr. 927.  The ALJ explained that Willis having only recently met Plaintiff when she wrote her statement decreased the value of her treating and examining relationship due to the length of time between her last treatment and the opinion. *Id*.  The ALJ noted that, on its face, Willis's

opinion appeared to be based on Plaintiff's report of subjective complaints and reported symptoms. *Id*. The initial intake form prepared by Willis appears to draw from Plaintiff's own statements concerning his symptoms. Tr. 1394, 1398, 1401. Willis's physical exam noted "moderately decreased flexion and lateral rotation; significantly decreased extension and tenderness to palpation." Tr. 1402. The ALJ cited germane reasons for discounting Willis's opinion, specifically considering the brief length of treatment and the lack of explanation she provided. Those are rational considerations and the ALJ's determination that Willis's opinion was of limited value is supported by the record as a whole.

## IV.    Remand for Benefits

The Act empowers courts to affirm, modify, or reverse a decision of the Commissioner "with *or without* remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added). The Ninth Circuit has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: A court may exercise its discretion to reverse and remand a case for payment where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ failed to provide legally sufficient reasons for rejecting medical or testimonial evidence, and (3) if the improperly rejected evidence were credited as true, the ALJ would be required to find the claimant disabled on remand ("the credit-as-true rule"). *Garrison*. 759 F.3d at 1021-22.

Circuit precedent clarifies that remand for further proceedings is the appropriate remedy where the ALJ relied on boilerplate language or left specific issues unaddressed. *See Dominguez v. Colvin*, 808 F.3d 403, 409-10 (9th Cir. 2015) (remanding for further proceedings where there were specific "inconsistencies, conflicts, and gaps in the record" that the ALJ had not addressed).

Here, the Court finds that (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ failed to provide legally sufficient reasons for rejecting medical and testimonial evidence, and (3) if the improperly rejected evidence—Plaintiff's subjective symptom testimony and the "marked" limitation ranking in more than one domain from Dr. Cole and Dr. Mendelson—were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*. 759 F.3d at 1021-22. Plaintiff is entitled to calculation and award of benefits.

## CONCLUSION

Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for calculation and award of benefits to Plaintiff.

It is so ORDERED and DATED this  27th  day of February 2023.

                                    /s/Ann Aiken 

                                    Ann Aiken
                                    United States District Judge